ELEANOR KAY LaBARRE, PLAINTIFF v. DUKE UNIVERSITY AND PRIVATE DIAGNOSTIC CLINIC, DEFENDANTS

No. 8914SC1044

(Filed 17 July 1990)

**1. Contracts § 4.2 (NCI3d); Physicians, Surgeons, and Allied Professions § 12 (NCI3d) — anesthesiologist's promise to administer anesthetic — no consideration — no breach of contract**

In an action to recover damages for injuries sustained by plaintiff while under defendants' care during delivery of her child, the trial court properly granted summary judgment for defendant on plaintiff's breach of contract claim where plaintiff claimed to have requested and received an anesthesiologist's assurance that, if an epidural became necessary during delivery, only he or another fully trained faculty anesthesiologist would administer it, but this promise was not supported by consideration and was consequently unenforceable.

**Am Jur 2d, Contracts § 397; Physicians, Surgeons, and Other Healers §§ 202, 311.**

**2. Physicians, Surgeons, and Allied Professions § 12 (NCI3d) — malpractice of anesthesiologist — failure to keep promise personally to administer anesthetic — summary judgment for defendant proper**

The trial court properly allowed defendants' motions for summary judgment as to the issue of medical negligence where plaintiff did not allege that the resident physician who placed the catheter was negligent, but instead argued that the anesthesiologist's alleged failure to keep a promise as to who would administer the anesthetic was a breach of his duty of care owed to plaintiff, since North Carolina does not provide a remedy in tort where a promisor negligently fails to keep a contractual promise.

**Am Jur 2d, Contracts § 397; Physicians, Surgeons, and Other Healers §§ 202, 311.**

APPEAL by plaintiff from *Currin (Samuel T.), Judge.* Judgment entered 25 July 1989 in Superior Court, DURHAM County. Heard in the Court of Appeals 9 April 1990.

LABARRE v. DUKE UNIVERSITY

[99 N.C. App. 563 (1990)]

In this civil action, plaintiff seeks to recover damages for injuries she sustained while under defendants' care during the delivery of her third child. Plaintiff alleges in her complaint that she and her husband had a meeting with Dr. Lloyd F. Redick, Director of Obstetrical Anesthesia at Duke Hospital and member of defendant Private Diagnostic Clinic, approximately two months before her baby was due. In that meeting, according to plaintiff, she and her husband asked for and received Dr. Redick's assurance that if she needed an epidural anesthetic at the time of delivery, only Dr. Redick himself or another fully trained anesthesiologist would place the catheter.

According to the record on appeal, the following facts are undisputed:

1. On 10 April 1984, plaintiff was admitted to defendant hospital as a private patient of physicians who are members of defendant Private Diagnostic Clinic.

2. Prior to delivery of her baby, plaintiff was given an epidural anesthetic block, placed by catheter, to the epidural space of the spinal cord.

3. Placement of the catheter was performed by Dr. John V. Parham, a resident physician at defendant hospital.

4. Dr. Parham's first attempt to make the epidural insertion resulted in a "wet tap", a term used when the epidural needle is inserted beyond the epidural space and punctures the dura (one of the layers covering the spinal cord) resulting in the escape of cerebrospinal fluid. On his second attempt, Dr. Parham inserted the needle into a blood vessel. On his third attempt, Dr. Parham successfully inserted the needle and achieved an epidural block.

5. After delivery of her baby, plaintiff began experiencing headaches, neck pain, stiffness and other problems which were attributed to misplacement of the catheter and leakage of cerebrospinal fluid during her labor.

In a complaint filed 10 April 1987, plaintiff alleges that "[a]s a direct and proximate result of the negligence of the defendants, plaintiff Eleanor Kay LaBarre suffered injury including neurologic sequelae, neurologic deficits, muscular weakness and injury, pain and mental anguish." She further claims that these problems have

diminished her capacity to earn wages and income. In addition, plaintiff seeks reimbursement for all medical and rehabilitative expenses incurred as a consequence of her injuries.

From a judgment entered 25 July 1989, allowing defendants' motions for summary judgment, plaintiff appealed.

*Grover C. McCain, Jr., and Ada F. Most for plaintiff, appellant.*

*Womble Carlyle Sandridge & Rice, by Charles F. Vance, Jr., Guy F. Driver, Jr., and David A. Shirlen, for defendant, appellee Duke University.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson, and William H. Moss, for defendant, appellee Private Diagnostic Clinic.*

HEDRICK, Chief Judge.

In her only assignment of error, plaintiff contends the trial court erred by allowing defendants' summary judgment motions with respect to her claims for breach of contract and for negligence. She argues that genuine issues of material fact exist, and defendants were therefore not entitled to judgment as a matter of law. We disagree.

A. BREACH OF CONTRACT

[1] Summary judgment is a drastic remedy which should be used with caution. *Bradshaw v. McElroy*, 62 N.C. App. 515, 302 S.E.2d 908 (1983). Nevertheless, summary judgment is appropriate if the moving party meets the burden of proving that an essential element of the nonmoving party's claim is nonexistent. *Anderson v. Canipe*, 69 N.C. App. 534, 317 S.E.2d 44 (1984). It is well established that in an action for breach of contract, defendant's promise must be supported by consideration for it to be enforceable. *Investment Properties v. Norburn*, 281 N.C. 191, 188 S.E.2d 342 (1972). This rule also applies where plaintiff attempts to modify an existing contractual agreement. Any new promise by defendant must also be supported by additional consideration. *Lee v. Paragon Group Contractors*, 78 N.C. App. 334, 337 S.E.2d 132 (1985), *disc. rev. denied*, 316 N.C. 195, 345 S.E.2d 383 (1986).

In the present case, plaintiff claims to have requested and received Dr. Redick's assurance that if an epidural anesthetic became necessary during her delivery, only he or another fully-trained

faculty anesthesiologist would administer it. This promise, however, was not supported by consideration. It was merely gratuitous and, consequently, unenforceable. We therefore conclude that the trial judge properly allowed summary judgment on the issue of breach of contract.

## B.  NEGLIGENCE

[2]  Plaintiff also claims the trial court erred by allowing defendants' motions for summary judgment as to the issue of medical negligence. Although plaintiff does not contend the resident physician who placed the catheter was negligent, she does argue that Dr. Redick's alleged failure to keep a promise as to who would administer the anesthetic was a breach of his duty of care owed to plaintiff. Such breach, according to plaintiff, was the proximate cause of her injuries.

This court has previously stated that "an action in tort must [ordinarily] be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties, rather than one based on an agreement between the parties." *Asheville Contracting Co. v. City of Wilson*, 62 N.C. App. 329, 342, 303 S.E.2d 365, 373 (1983). Moreover, "[a] tort action does not lie against a promisor 'for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill.' " *Holland v. Edgerton*, 85 N.C. App. 567, 572, 355 S.E.2d 514, 518 (1987) (*quoting Ports Authority v. Roofing Co.*, 294 N.C. 73, 83, 240 S.E.2d 345, 351 (1978) ).

Dr. Redick's alleged failure to keep his promise to plaintiff and her husband did not violate any duty of care imposed on him by law. Only Dr. Parham, the senior resident who placed the catheter, owed her a duty of care with respect to administering the anesthesia. Clearly, the only right arguably infringed as a result of Dr. Redick's alleged breach of promise was a contractual one. Even this right, however, was unenforceable due to a lack of consideration as previously discussed. Because North Carolina does not provide a remedy in tort where a promisor negligently fails to keep a contractual promise, a cause of action for medical negligence is not available to plaintiff. Thus, the trial court properly allowed defendants' motions for summary judgment as to plaintiff's negligence claim.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.

Judges PARKER and COZORT concur.