SUSAN SESSLER, Plaintiff v. LORETTA McDERMOTT MARSH, Defendant

No. COA00-801

(Filed 17 July 2001)

**1. Brokers— expired real estate listing—procuring cause of sale**

The trial court did not err in a nonjury trial by concluding that plaintiff-realtor was the procuring cause of the sale of a commercial building where plaintiff, as building manager and leasing agent, had ongoing conversations with an occupant about purchasing the building dating back to the early 1990s; plaintiff entered an exclusive right to sell listing contract with defendant when defendant decided to sell in 1996; the first contract with the occupant fell through due to unexpected costs for bringing the building into compliance with building codes; the occupant entered a second contract to purchase the property, eventually formed another business incorporated for the purpose of closing on the property, and assigned its rights under the conract to the

corporation; the corporation closed on the property; plaintiff did not participate in negotiations for the second contract; and the purchaser testified that he had no prior contact with defendant or her family and would not have been negotiating for the purchase of the building without plaintiff's efforts. The sale was the proximate result of plaintiff's efforts even though the listing agreement had expired when the second contract was entered.

**2. Brokers— real estate commission—expiration of listing— no break in continuity of events**

A realtor's right to a commission for the sale of a commercial building was not extinguished by the expiration of her listing contract where the purchaser testified that plaintiff was the party who procured him and that he would not have otherwise entered into negotiations for the purchase of the building. The listing contract is not rendered perpetual because there was no break in the continuity of events.

**3. Brokers— real estate listing—modification**

An alleged modification to a real estate listing between two contracts was not enforceable because there was no benefit to plaintiff or detriment to defendant which would constitute consideration.

**4. Brokers— real estate listing—consideration**

The trial court did not err by granting summary judgment for plaintiff-realtor on the defense of lack of consideration for the listing agreement where the listing contract provided valuable and legal consideration on its face. Where there is consideration on the face of the document, the court will not look for the adequacy of the consideration without fraud and there is no evidence here that the document was fraudulent as to defendant.

**5. Unfair Trade Practices— real estate commission—failure to pay—second contract**

The trial court did not err by granting summary judgment for defendant on plaintiff's claim for unfair and deceptive practices arising from two contracts to sell real estate and the failure to pay a commission. The evidence undisputedly demonstrated that the inability to close on the first contract and the creation of a new entity to purchase the property was caused by the purchaser's difficulty obtaining financing, not by any effort by defendant to deceive plaintiff.

Appeal by plaintiff and defendant from order entered 24 September 1998 by Catherine C. Eagles and appeal by defendant from judgment entered 6 March 2000 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 17 May 2001.

*Floyd and Jacobs, L.L.P., by Jack W. Floyd, Robert V. Shaver, Jr., and James H. Slaughter, for plaintiff.*

*Adams Kleemeier Hagan Hannah & Fouts, by David A. Senter and David S. Pokela, for defendant.*

MARTIN, Judge.

Plaintiff brought this action to recover a real estate commission allegedly due her in the amount of $60,000. She alleged claims for breach of contract, unfair and deceptive practices, and *quantum meruit.* In her complaint, plaintiff alleged that she entered into an exclusive right to sell listing contract ("listing contract") with defendant for the sale of The Commerce Building property, located at 19 West Hargett Street in Raleigh. The listing contract provided, in pertinent part:

This EXCLUSIVE RIGHT TO SELL LISTING CONTRACT ("Listing Contract") is entered into this _____ day of _____, 19___ between Loretta McDermott Marsh as owner(s) ("Owner") of the property described below (the "Property") and Susan W. Sessler, as Listing Firm ("Agent").

1. In consideration of the Owner agreeing to list the Property for sale and in further consideration of Agent's services and efforts to find a buyer, Agent is hereby granted the exclusive right to sell the Property for a period of 4 months from July 15 1996 to and including November 15, 1996 for a cash price of $1,060,000.00.

2. Owner agrees to pay Agent a fee of 5.6604% if

(a) Agent produces a buyer who is ready, willing, and able to purchase the Property on the terms described above or on any terms acceptable to Owner, or

(b) the Property is sold or exchanged by Agent, Owner, or by any other party before the expiration of this Listing Contract; or

(c) the Property is sold or exchanged by Agent, Owner, or by any other party within 60 days after the expiration of this Listing Contract (the "protection period") to any party with whom Agent or any cooperating REALTOR or cooperating real estate broker has negotiated as a prospective buyer, provided Agent has notified Owner in writing within 10 days of the expiration of this Listing Contract of the name(s) of said prospective buyer(s).

However, Owner shall not be obligated to pay such fee if a valid listing contract is entered into between Owner and another real estate broker and the Property is sold, conveyed, or transferred during the protection period.

Plaintiff alleged that the property was sold by defendant and that plaintiff was the procuring cause of the sale.

In her answer, defendant denied that she owed a commission to plaintiff because the sale of the property did not occur within the exclusivity period of the listing contract and the property was not sold to the prospect procured by plaintiff. Defendant also asserted several affirmative defenses to the enforcement of the contract, including illegality of the contract, lack of consideration, laches, and failure to perform the condition precedent, as well as defenses to the unfair and deceptive practices claim, including the unconstitutionality of Chapter 75 and exemption. Defendant also asserted that plaintiff's claim in *quantum meruit* was barred by the express contract.

Plaintiff moved for summary judgment. At the conclusion of the summary judgment hearing, Judge Eagles ruled that plaintiff was entitled to partial summary judgment as to the amount of damages recoverable by her, if the jury found in her favor on the issue of defendant's breach of contract. Judge Eagles also granted plaintiff summary judgment as to the defenses of illegality, lack of consideration and unclean hands. Judge Eagles ruled that defendant was entitled to partial summary judgment as to plaintiff's claims for *quantum meruit* and unfair trade practices, and as to the claims that defendant breached paragraph 2(b) or 2(c) of the listing contract. The court found there was a disputed issue of material fact as to whether plaintiff produced a buyer pursuant to paragraph 2(a) of the listing contract, but stated "[t]o the extent defendant claims plaintiff cannot recover pursuant to paragraph 2(a) because the property was not sold before [it's] expiration [] or within 60 days of the expiration of the Listing Contract, Summary Judgment is allowed for the plaintiff."

SESSLER v. MARSH

[144 N.C. App. 623 (2001)]

The disputed issue came on for trial before Judge Albright, sitting without a jury, on 14 February 2000. Plaintiff's evidence tended to show that plaintiff was the manager and leasing agent for The Commerce Building property from 1987 to 1994. During this period, defendant desired to sell the property and plaintiff testified that she was the listing agent. Plaintiff left the position and moved to Greensboro in 1994. However, in 1996, defendant's daughter, Andrea Marsh, asked for plaintiff's assistance in selling the building and plaintiff later negotiated the listing contract with Andrea, who held defendant's power of attorney. William Horton testified that he is the sole owner of a real estate development business called DFI Group, Inc. ("DFI"), which was an occupant of The Commerce Building. He stated that he knew plaintiff as the building manager, and had ongoing conversations with her dating back to the early 1990s about the possibility of DFI purchasing The Commerce Building property. He further testified that he and plaintiff had a meeting with Andrea Marsh in 1995 or 1996 to discuss a purchase agreement, and that Andrea stated the sales price was $1,000,000. This meeting, Horton testified, was the first contact he had with any member of the Marsh family. After the meeting, he suggested that plaintiff add a sixty thousand dollar commission to the purchase agreement. The resulting contract ("first contract"), dated 1 August 1996, provided for a $1,060,000 purchase price and contained a provision that $60,000 would be due to plaintiff upon closing as a brokerage commission. Horton testified that DFI encountered problems obtaining the financing for the property because there were significant amounts of unexpected costs and future obligations to bring the building into compliance with applicable codes in Raleigh. DFI received extensions from defendant under the first contract to address these problems, but eventually was forced to enter into another contract ("second contract"), which was executed 15 January 1997. Horton testified that plaintiff was not involved in the negotiations for the second contract. Because DFI was unable or elected not to obtain the financing under the second contract, it assigned its rights under the contract to The Commerce Building, L.L.C. ("L.L.C.") on 23 January 1997. Horton testified that he is a seventy percent owner of L.L.C., which was a new entity incorporated for the purpose of closing on The Commerce Building property. The sale closed in March of 1997 at a price of $1,060,000. Horton additionally testified that it was his understanding that the assignment of rights under the contract would not affect the commissions owed to plaintiff, and that he would not have paid the additional $60,000 if he had realized that plaintiff was

not going to be paid her commission. Defendant's motion for directed verdict at the close of plaintiff's evidence was denied.

Defendant presented her own testimony, that of her son, Charles Marsh, and three attorneys who were involved in the negotiations. She testified that plaintiff was not involved in procuring the deal with L.L.C. She further testified that she signed a deed to convey the property to DFI, but later authorized her attorney to change the grantee's name to L.L.C. Charles Marsh testified that he took over the negotiations related to the sale of the property in the latter part of August 1996, and that the first contract expired for lack of performance because DFI could not get the financing. He testified that plaintiff was not involved in the negotiations for the second contract, which did not provide for a commission; instead the contract was for a "flat" purchase price of $1,060,000. The attorneys testified to the substance of the negotiations and the reason for the delays in closing.

At the conclusion of the trial, the court made findings of fact and conclusions of law and entered a judgment for plaintiff in the amount of $60,000 plus pre-judgment interest. Defendant appeals from this judgment and both parties appeal from the order granting partial summary judgment.

I.

[1] The standard of appellate review for a decision rendered in a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. *G.R. Little Agency, Inc. v. Jennings*, 88 N.C. App. 107, 362 S.E.2d 807 (1987). Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary. *Id.* at 112, 362 S.E.2d at 811.

Defendant contends the trial court's findings of fact nos. 2, 3, 13, 16 and 17 were erroneous for various reasons. We find competent evidence in the record to support findings of fact nos. 2, 3 and 13, in which the trial court found that plaintiff worked on the sale of the property prior to July 1996 at the request of defendant and Andrea Marsh, that plaintiff approached Horton, who was the 100% owner of DFI, about the feasibility of DFI purchasing the property, and that DFI assigned its rights to purchase the property under the second contract to L.L.C. of which Horton was a 70% owner. We agree with plaintiff that findings of fact no. 16 and no. 17 are not supported by the record. In finding of fact no. 16, the court quotes language from

the mutual indemnity and release agreement, which was not before the court at trial. Finding of fact no. 17 provides:

> Throughout all transactions it was readily apparent to the parties that William Horton through DFI, Group, Inc. could not close due to difficulties known to the parties. Discussions were held between the parties regarding DFI, Group Inc.'s difficulties in closing on the Property. In addition, the threat of condemnation of the building led the Seller to want to sell the Property.

In fact, however, DFI's inability to close was not apparent until September 1996 and therefore was not apparent "throughout all transactions." However, we deem these errors to be immaterial because the findings are not essential to the judgment entered. *See Teague v. Teague*, 84 N.C. App. 545, 353 S.E.2d 242 (1987).

Defendant next contends the trial court's findings of fact do not support its conclusions of law and judgment. Defendant assigns error to the following conclusions of law:

3. Plaintiff produced The Commerce Building, L.L.C. as a buyer pursuant to paragraph 2(a) of the Listing Contract.

4. Plaintiff originated a series of events which, without break in their continuity, resulted in the accomplishment of the prime objective of employment, which was the sale of the subject Property.

5. Plaintiff produced a buyer who was ready, willing, and able to purchase the Property on the terms described in the Exclusive Right to Sell Listing Contract or on terms acceptable to Defendant Marsh.

6. Plaintiff fulfilled her obligations under the Exclusive Right to Sell Listing Contract and is entitled to her commission of $60,000.00.

Defendant first argues the conclusions of law are erroneous because plaintiff did not produce L.L.C. as a buyer who was ready, willing, and able to purchase the property pursuant to paragraph 2(a) of the listing contract. Defendant contends the original purchaser, DFI, was unable to purchase the property, and the property was ultimately sold to L.L.C. without plaintiff's intervention.

The general rule is that a broker is entitled to a commission "whenever he procures a party who actually contracts for the pur-

chase of the property at a price acceptable to the owner." *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 250-51, 162 S.E.2d 486, 491 (1968).

> The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services. The term *procuring cause* refers to 'a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal's terms.'

*Id.* (quoting 12 C.J.S. <u>Brokers</u> § 91, p. 209 (1938)).

Defendant argues that a broker is not the procuring cause when the broker's prospect does not purchase the property individually but later, without the intervention of the broker, purchases the property as part of a partnership or syndicate, and cites 12 Am.Jur.2d <u>Brokers</u> § 238 and *Marshall v. White*, 245 F.Supp. 514 (W.D.N.C. 1965), in support of this contention. The pertinent language in § 238 provides:

> [W]here a broker's prospect refuses or is unable to purchase the property individually, and thereafter, without the intervention of the broker, the property is sold to a partnership or syndicate of which the prospect was a member at the time of the broker's negotiation, or with which the prospect subsequently became associated for the purpose of purchasing the property, the broker is not entitled to compensation.

In *Marshall*, the broker introduced the seller to a prospective lessee, Gilbert Winkenwerder. The lessor ultimately leased the property to a separate entity, which was owned by Winkenwerder's sons. The court noted that "but for" the broker's introduction of the lessor to Winkenwerder, the sale would not have taken place; however, the court said "[t]he term 'procuring cause', as used in describing a broker's activity, means more than 'but for' causation." *Marshall*, 245 F.Supp at 517. The court held that the broker was not entitled to a commission, relying in part on the above-quoted language from Am.Jur.2d. *Id.*

Other jurisdictions, however, have not reached the same conclusion as the court in *Marshall*. In *Regional Redevelopment Corp. v.*

*Hoke*, 547 A.2d 1006 (1988), the District of Columbia Circuit Court of Appeals stated " 'it is the general rule in this country that a broker's right to a commission is not affected by the fact that the customer procured by him became associated with others who joined with such customer in the purchase of property.' " *Id.* at 1010 (quoting *Zetlin v. Scher*, 241 Md. 590, 217 A.2d 266, 269 (1966). In a footnote, the court stated "[c]ases cited for the opposite result generally involve more extended time periods or clearer termination of broker negotiations than in the case before us; e.g., *Marshall v. White*, 245 F.Supp. 514, 516-17 (W.D.N.C. 1965); *English v. William George Realty Co.*, 55 Tex. Civ. App. 137, 117 S.W. 996 (1909)." *Id. See also Perdue v. Gates*, 403 So.2d 165, 170 (Ala. 1981) (stating "there is conflicting authority on whether a realtor is entitled to a commission for introducing a prospective buyer who brings in partners or other parties as co-purchasers").

The dispositive issue in these cases appears to be one of proximate cause. As the Supreme Court noted in *Duckworth*, "[t]he broker is the procuring cause if the sale is the direct and proximate result of his efforts or services." 274 N.C. at 251, 162 S.E.2d at 491. We hold, under the circumstances of this case, that the trial court did not err in concluding that plaintiff was the procuring cause of the sale because the sale was the proximate result of plaintiff's efforts. Unlike *Marshall* where the broker only introduced the parties, was uninvolved in the negotiations, and never had a listing contract or discussed the issue of a commission, the record in this case reflects that plaintiff was involved in the negotiations pertaining to the first contract with DFI and that there was no break in continuity between the first and second contracts. Moreover, Horton testified that he had no prior contact with defendant or her family and, without plaintiff's efforts, would not have been negotiating for the purchase of the building. Therefore, it was not error for the trial court to conclude that plaintiff was the procuring cause of the sale in this case.

Defendant also assigns error to the denial of her motion for summary judgment on the issue of whether plaintiff produced a buyer who was ready, willing, and able to purchase the property because she argues there was no genuine issue of material fact. "[T]he denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits." *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Therefore, this argument is not properly before the Court.

## II.

**[2]** Defendant next argues that the court erred in granting summary judgment for plaintiff as to the effect of the listing contract's expiration on plaintiff's recovery under paragraph 2(a). She argues that even if plaintiff produced a buyer who was ready, willing, and able to purchase the property, this was not accomplished until after the contract expired on its terms and, therefore, plaintiff should be precluded from recovering her fee under the contract. Defendant points to the limited four month period of the contract, the language in paragraph (2)(b), which states, "Owner agrees to pay Agent a fee . . . if . . . the Property is sold or exchanged . . . before the expiration of this Listing Contract," and the language in paragraph (2)(c) which provides for payment of the fee if the property is sold by any party within 60 days after the expiration of the contract.

In *Collins v. Ogburn Realty Co.*, 49 N.C. App. 316, 271 S.E.2d 512 (1980), the sellers of a home attempted to make a similar argument where the exclusive listing contract gave the broker 120 days to sell the house at a designated price, and provided for a commission if a prospect to whom the broker showed the home purchased it within 90 days from the expiration of the listing contract. In that case, an offer to purchase was made within the 120-day period but the buyers were unable to sell their previous home, and the contract was not closed until one year later. *Id.* at 317-18, 271 S.E.2d at 513. The court held:

> There exists no dispute that the [broker] performed the duty of presenting to the [sellers] a party who actually contracted to purchase their property upon terms acceptable to them and that this was done well within the 120-day period set forth in the listing agreement. Plaintiffs' contention that defendants are precluded from recovering a commission because of their failure to effect a sale of the property within the 120-day period is unavailing in view of the fact that, as noted above, it is defendants' procurement of 'a party who actually contracts for the purchase of the property,' which determines entitlement to a realtor's commission.

*Id.* at 320, 271 S.E.2d at 514-15 (citation omitted). Defendant argues that the present case is distinguishable from *Collins* because the second sales contract, which is the contract that actually produced the sale, was not put in force during the period of the listing contract. This distinction, in our view, makes no difference to the outcome of

the case. During the period of the listing agreement, defendant sought a $1,000,000 sales price and plaintiff produced DFI Group, a corporation owned solely by Horton, which entered into a contract for the purchase of the building. Horton testified that plaintiff was the party who procured him and that he would not have otherwise entered into negotiations for the purchase of the building. Because of difficulty in obtaining funding, DFI entered into the second contract for the purchase of the property and later assigned its rights in this contract to L.L.C., a corporation in which Horton is a seventy percent shareholder. L.L.C. eventually purchased the property for $1,060,000. As this Court said in *Collins*, "it is defendants' procurement of 'a party who actually contracts for the purchase of the property,' which determines entitlement to a realtor's commission." *Id.* Having held that plaintiff's efforts in procuring DFI were the procuring cause of the eventual sale, we hold that the court did not err in granting summary judgment to plaintiff on the issue of the contract's expiration.

In addition, we disagree with defendant's argument that such an interpretation of the listing contract renders a broker's contractual rights perpetual. As noted above, to recover a commission, a broker must procure the party who then purchases the property. *Duckworth*, 274 N.C. at 251, 162 S.E.2d at 491. To be the procuring cause, the broker must set "in motion a series of events which, *without break in their continuity*" lead to the procurement of a purchaser who is ready, willing and able to purchase the property. *Id.* (emphasis added). Contrary to defendant's argument, no perpetual contractual rights are created because the broker's right to recover is extinguished when there is a break in the continuity of events. In the case before us, there was no break in the continuity of events; therefore, plaintiff's right to recover was not extinguished.

[3] Finally, we reject defendant's argument that plaintiff's right to recover a commission under paragraph 2(a) was barred by the terms of paragraph 14 of the first contract, which provided:

> No party shall have any obligation for commission unless a closing occurs pursuant to the terms of this Contract. . . . Susan Sessler joins in this Contract for the purposes of acknowledging that the foregoing constitutes her exclusive commission agreement with Seller and Buyer with respect to the property.

To give effect to defendant's argument, we would have to conclude that the first contract, executed 1 August, modified the terms of para-

SESSLER v. MARSH

[144 N.C. App. 623 (2001)]

graph 2(a) of the listing contract, executed prior to 15 July. However, to be enforceable a modification to a contract must be supported by consideration. *Labarre v. Duke University*, 99 N.C. App. 563, 393 S.E.2d 321, *disc. review denied*, 327 N.C. 635, 399 S.E.2d 122 (1990). Under the listing contract plaintiff promised to procure a buyer willing to purchase the property for $1,000,000 in return for a commission of 5.6604%, which equals $60,000. Paragraph 14 of the first contract provides, however, that plaintiff is entitled to recover a commission of $60,000 only upon closing of the contract between Horton and defendant for $1,000,000. There is no benefit to plaintiff or detriment on the part of defendant which would constitute consideration for this modification. Accordingly, it is unenforceable and defendant's argument must be rejected.

III.

**[4]** Defendant next argues, in the alternative, that the court erred by granting summary judgment in favor of plaintiff with respect to the defense asserting a lack of consideration for the listing agreement. She contends issues of material fact exist pertaining to plaintiff's consideration for the listing contract, and that the listing contract is unenforceable because defendant and Horton already knew each other in a landlord/tenant relationship. She argues, in addition, that the commission provision was added after the sale of the property had already been discussed with Horton.

To be enforceable, a contract must be supported by consideration. *Lee v. Paragon Group Contractors, Inc.*, 78 N.C. App. 334, 337 S.E.2d 132 (1985), *disc. review denied*, 316 N.C. 195, 345 S.E.2d 383 (1986). Consideration "consists of 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.' " *Id.* at 338, 337 S.E.2d at 134 (citation omitted). The listing contract provides that defendant will pay plaintiff a commission if plaintiff procures a buyer who is ready, willing and able to purchase the property upon the seller's terms, specified in the contract. On its face, the document provides valuable and legal consideration. Where there is consideration on the face of the document, the court will not look for the adequacy of the consideration unless it constitutes "a fraud upon the party sought to be restrained." *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 666, 158 S.E.2d 840, 845 (1968). There is no evidence that the document was fraudulent as to defendant. Therefore we hold the trial court did not err in granting summary judgment for plaintiff on the issue of consideration.

SESSLER v. MARSH

[144 N.C. App. 623 (2001)]

IV.

**[5]** Plaintiff cross-appeals the grant of partial summary judgment as to her claim for unfair and deceptive practices. A court may grant summary judgment if in viewing "the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party, to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Pine Knoll Ass'n, Inc. v. Cardon,* 126 N.C. App. 155, 158, 484 S.E.2d 446, 448, *disc. review denied,* 347 N.C. 138, 492 S.E.2d 26 (1997); N.C.R. Civ. P. 56 (2000). Defendant argues that a genuine issue of material fact existed as to whether defendant's actions were unfair or deceptive within the definition of G.S. § 75-1.1. "To establish a *prima facie* claim for unfair and deceptive practices, plaintiff must show that: '(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, N.C. Gen. Stat. 75-1.1, and (3) the act proximately caused injury to the plaintiff.' " *Prince v. Wright,* 141 N.C. App. 262, 268, 541 S.E.2d 191, 196 (2000) (quoting *Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995)). An unfair practice is one that is " 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.' " *Branch Banking and Trust Co. v. Thompson,* 107 N.C. App. 53, 61, 418 S.E.2d 694, 700, *disc. review denied,* 332 N.C. 482, 421 S.E.2d 350 (1992) (quoting *Johnson v. Phoenix Mut. Life Ins. Co.,* 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980)). A practice is deceptive "if it 'has the capacity or tendency to deceive.' " *Id.*

> It is well recognized, however, that actions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.

*Id.* (citation omitted). Instead, a plaintiff must " 'show substantial aggravating circumstances attending the breach to recover under the Act.' " *Id.* (quoting *Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir. 1989)).

In ruling on the motion for summary judgment, Judge Eagles had before her the contracts, the affidavits of plaintiff, Charles Marsh, and four attorneys who were involved in the negotiations, as well as letters from Horton attesting to plaintiff's role in the negotiations and in procuring him as the buyer. This evidence indisputably demon-

strated that the inability to close on the first contract and the delay in closing on the second contract were caused by DFI's difficulty in obtaining the financing to purchase the building, and not by any effort on the part of defendant to deceive plaintiff. Though plaintiff contends in her brief the revisions of the agreements between defendant and Horton were a "façade of paperwork" to give the appearance of a new transaction with a new buyer, the evidence before the trial court belies this characterization. Gilbert C. Laite, III, an attorney who represented defendant during the negotiations, testified that he attended a meeting in February 1997 in which an accountant for DFI stated that it "could not make the deal work financially on its own and that DFI needed a guarantor to make the purchase" and was "having difficulty obtaining guarantors because of certain building code requirements." The incorporation of L.L.C. to purchase the property is consistent with DFI's difficulty in obtaining guarantors. Even taking the evidence that was before the court on this motion in the light most favorable to plaintiff, we hold that the court did not err in granting summary judgment on this issue because plaintiff has failed to show substantial aggravating circumstances attending the breach of contract.

Affirmed.

Judges HUNTER and HUDSON concur.