NRC GOLF COURSE, LLC, PLAINTIFF v. JMR GOLF, LLC; ROBERT B. HOBBS, JR., TRUSTEE AND THE BANK OF CURRITUCK, DEFENDANTS

No. COA11-738

(Filed 21 August 2012)

**1. Appeal and Error—partial summary judgment—disputed sale of golf course—certiorari**

The Court of Appeals treated an appeal from summary judgment as a petition for *certiorari* in the interest of judicial economy in a case involving the disputed sale of a golf course to plaintiff and the lease of the course to a subsidiary of the seller. Issues concerning the future possession and control of the property and the present and future compensation for use of the operating material were not resolved, so that the summary judgment was partial.

**2. Real Property—lease and option to purchase—one agreement**

The trial court erred by determining that a lease and an option to purchase a golf course were separate agreements where

NRC GOLF COURSE, LLC v. JMR GOLF, LLC

[222 N.C. App. 492 (2012)]

the lease and original option agreement were executed contemporaneously and were entered into in furtherance of a common purpose, the lease agreement referenced and incorporated the original option to purchase, and the only change to the option to purchase was a modification of the price term.

### 3. Contracts—lease payments—modified option—no consideration

Lease payments were not sufficient consideration to support the modification of an option to purchase where plaintiff was legally obligated to make the payments. *First-Citizen's Bank & Trust Co. v. Frazelle*, 226 N.C. 724, did not apply.

### 4. Estoppel—quasi—modification of option—invalid—acceptance of payments under original contract

Quasi-estoppel did not apply and the trial court properly granted summary judgment for defendant JMR Golf, LLC where there was a lease of a golf course with an option to purchase, there was a modification of the option that was invalid for lack of consideration, and payments were accepted under the lease agreement but not under the revised option. The lease and original option were part of one transaction, but the modification was not and the payments accepted under the lease were not required under the terms of the revised option.

### 5. Real Property—purchase option modification—validity not reached

The issue of whether an option to purchase a golf course was facially valid was not reached where a modification to the option was invalid for lack of consideration and summary judgment for defendant was appropriate.

### 6. Appeal and Error—mootness—injunctive relief—object of relief obtained

The question of whether the trial court erred by granting preliminary and mandatory injunctive relief dispossessing plaintiff of a golf course was moot where plaintiff had regained control of the golf course.

Judge ERVIN concurring in part and concurring in the result in part.

IN THE COURT OF APPEALS

Appeal by plaintiff from orders entered 22 July 2010 and 30 September 2010 and opinion and order entered 29 December 2010 by Judge John R. Jolly, Jr., in Carteret County Superior Court. Heard in the Court of Appeals 11 January 2012.

*Vandeventer Black, LLP, by Norman W. Shearin and Wyatt M. Booth, for plaintiff-appellant.*

*Williams Mullen, by Camden R. Webb and Brian C. Vick, for defendant-appellee JMR Golf, LLC.*

BRYANT, Judge.

Where a modification to the option to purchase was not supported by adequate consideration, the revised option to purchase was unenforceable. Therefore, the trial court did not err in entering summary judgment in favor of defendants. Where plaintiff has regained possession of the golf course and the court has yet to determine the compensation to be paid to plaintiff for previously surrendering golf course operating equipment, the plaintiff's contentions regarding the trial court's entry of preliminary and mandatory injunctive relief are moot and premature, respectively, and are accordingly dismissed.

*Facts and Procedural History*

On 21 December 2009, plaintiff NRC Golf Course, LLC, (NRC) filed a complaint against JMR Golf, LLC, (JMR); Robert B. Hobbs, Jr.; and The Bank of Currituck (the Bank) seeking a declaratory judgment regarding the rights and obligations of the parties under a lease agreement between JMR and NRC which included an option to purchase the North River Golf Course (the golf course) in Carteret County.

According to the complaint, JMR purchased the golf course from Guide Group, LLC, (Guide Group) in July 2006. Upon purchase, JMR agreed to lease the golf course to NRC (a wholly owned subsidiary of Guide Group). The Triple Net Lease Agreement (the Lease Agreement) entered into by JMR and NRC, dated 17 July 2006, included an Option to Purchase whereby NRC could purchase the golf course from JMR.

The original Option to Purchase, as executed with the Lease Agreement on 17 July 2006, granted NRC the right to purchase the golf course for $2,500,000.00 at any time before the expiration of the Lease Agreement (Option A). Pursuant to the advice of Goodman & Company, the accountants for Guide Group and NRC, the price term in the original Option to Purchase was modified in order to achieve

tax advantages. The revised Option to Purchase, executed on 7 March 2007 and deemed effective as of 17 July 2006, granted NRC the option to purchase the golf course at a price based on the fair market value of the property on the exercise date (Option B or revised option).

In November 2007, JMR granted the Bank a lien on the golf course to secure a loan. The lien was evidenced in the deed of trust and the deed of trust listed Robert B. Hobbs, Jr., as trustee.

Pursuant to the Lease Agreement, NRC made monthly lease payments of $16,666.00 to JMR from August 2006 until October 2009. By letter dated 28 October 2009, NRC notified JMR of its intention to exercise the Option to Purchase the golf course under the Lease Agreement. As a member of NRC's parent company—Guide Group—and pursuant to NRC's operating agreement as a wholly owned subsidiary of Guide Group, JMR demanded access to NRC's financial records. NRC rejected JMR's demand for access to its financial records.

On 21 December 2009, NRC filed its complaint. On 2 February 2010, NRC filed a Motion to Require Deposit of Funds requesting that the court order NRC's $16,666.00 monthly payments to be deposited in an interest bearing account or with the Carteret County Clerk of Superior Court.

On 11 June 2010, JMR filed with the trial court a Motion for Affirmative Emergency Injunctive Relief to Require Monthly Payments. JMR requested that the court enter an order requiring NRC to make all lease payments for the months of February, March, April, May, and June 2010 and to require NRC to make monthly lease payments in the amount of $16,666.00 during the pendency of the litigation.

On 22 July 2010, the trial court entered an Order Granting Preliminary Injunction in which it ordered NRC to pay $99,996.00 for golf course lease payments not made between February 2010 and July 2010, as well as make monthly payments in the amount of $16,666.00 beginning 1 August 2010 until the injunction was dissolved or NRC surrendered possession of the golf course to JMR.

On 28 September 2010, NRC filed a Motion for Assistance in Surrender of Golf Course, requesting a hearing as "the parties [had] been unable to agree to material terms" of NRC's surrender of the golf course. On 29 September 2010, NRC filed a motion for summary judgment.

On 30 September 2010, the trial court entered an order, the purpose of which was "only to preserve the status quo between NRC and JMR during the pendency of [the] litigation."

[The court ordered that] [u]pon surrender of the Golf Course to JMR, NRC also immediately shall surrender to JMR possession of all Golf Course Operating Equipment. . . . Reasonable compensation to NRC for possession and use of the Operating Equipment by JMR will be determined by the court upon resolution of this action.

On 19 November 2010, NRC filed a new motion for summary judgment "as to a declaration of the respective rights and obligations of NRC and [JMR] under . . . the Option to Purchase, to the [Lease Agreement] dated July 17, 2006 between NRC and JMR . . . .".

On 29 December 2010, the trial court entered an Opinion and Order in which it concluded that the revised Option to Purchase contained in the Lease Agreement between JMR and NRC was not enforceable; that even if it had been enforceable, NRC's title would still be subordinate to the Bank's deed of trust; and NRC was not entitled to additional security with regard to operation of the golf course by JMR. The court further ordered that it would hold a later hearing to consider and/or determine the remaining issues between the parties, including the future possession and control of the golf course and the compensation, if any, due to NRC by JMR for use of the golf course operating equipment. NRC appeals.

On appeal, NRC contends that the trial court erred in (I) denying its motion for summary judgment and granting summary judgment in favor of JMR and the Bank and (II) granting JMR preliminary and mandatory injunctive relief.

*Order granting dismissal of appeal as to the Bank and
Robert B. Hobbs, Jr.*

We note that on 21 October 2011, subsequent to NRC filing the record on appeal and its brief with this Court, NRC and the Bank filed a Joint Rule 37(e)(2) Motion for Partial Withdrawal of Appeal requesting an order from this Court dismissing the appeal as to the Bank and the trustee under the deed of trust, Robert B. Hobbs, Jr. The motion was granted and an order was entered dismissing the Bank and Robert B. Hobbs, Jr., from this appeal on 7 November 2011. Therefore, we consider NRC's contentions on appeal only as they may apply to JMR, the sole remaining defendant in this matter.[1]

---

1. We do not address the argument in Section II, Subparagraph F of plaintiff's brief as it concerns only the rights between plaintiff and the Bank and has been withdrawn from consideration.

*Appeal of orders granting injunctions and partial summary judgment*

[1] Yet, before we reach the merits of NRC's arguments, we must consider whether the orders appealed from are properly before this Court. On 13 January 2011, NRC filed with the Carteret County Clerk of Superior Court a notice of appeal from the following orders: the 22 July 2010 order granting a preliminary injunction in favor of JMR; the 30 September 2010 order granting mandatory injunctive relief in favor of JMR with respect to NRC's motion for assistance in obtaining surrender of the golf course; and the 29 December 2010 order denying NRC's motion for summary judgment, granting summary judgment in favor of JMR and the Bank, and denying NRC's motion for an order requiring additional security.

However, in the trial court's 29 December 2010 order, the trial court further ordered that:

> On January 18, 2011, . . . the court will hold a hearing and status conference with all parties for the purpose of considering and/or determining then-remaining issues between the parties, including but not limited to (a) future possession and control of the Golf Course and (b) present and future compensation, if any, to be paid by JMR to NRC for use of the Golf Course Operating Equipment at times material to this civil action.

In addition, the trial court stated that "[a]fter such hearing and status conference, the court anticipates entering a final disposition Order[.]"

> Because the trial court order did not completely dispose of the case, its order is effectively an order of partial summary judgment and therefore interlocutory. *Wood v. McDonald's Corp.*, 166 N.C.App. 48, 53, 603 S.E.2d 539, 543 (2004). There is generally no right to appeal from an interlocutory order, *Id.*; *but cf. Southern Uniform Rentals v. Iowa Nat'l Mutual Ins. Co.*, 90 N.C.App. 738, 740, 370 S.E.2d 76, 78 (1988) (an interlocutory order is immediately appealable when it affects a substantial right), because most interlocutory appeals tend to hinder judicial economy by causing unnecessary delay and expense, *Love v. Moore*, 305 N.C. 575, 580, 291 S.E.2d 141, 146 (1982). However, because the case *sub judice* is one of those exceptional cases where judicial economy will be served by reviewing the interlocutory order, we will treat the appeal as a petition for a writ of certiorari and consider the order on its merits. *Ziglar v. Du Pont Co.*, 53 N.C.App. 147,

149, 280 S.E.2d 510, 512, *disc. review denied*, 304 N.C. 393, 285 S.E.2d 838 (1981); N.C.R. App. P. 21(a)(1).

*Carolina Bank v. Chatham Station, Inc.*, 186 N.C. App. 424, 428, 651 S.E.2d 386, 388-89, (2007).[2] In the instant case, we treat the interlocutory appeal as a petition for writ of certiorari and consider the merits of the appeal.

*I*

Reaching the merits of the case, NRC contends that the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of JMR. NRC specifically assigns error to the trial court's findings, which are actually conclusions of law, in paragraphs 48[3], 53[4], and 55[5] of its 29 December 2010 opinion and order.

---

2. *See* N.C. R. App. P. 21(a)(1) (4/15/12) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals . . . when no right of appeal from an interlocutory order exists . . . .").

3. Finding of fact 48. "Here, Option B does not set forth an objective process or mechanism for determining a purchase price for the Golf Course. It simply provides that the purchase price for the Golf Course 'shall be based on fair market value at exercise date *validated* by an independent third party appraisal.' (emphasis added). While there is a bare bones agreement as to use of a third party appraisal, there is no agreement as to what fair market value the appraisal is to 'validate.' Among other things there is no agreement as to how or what an initial determination of fair market value is to be made, how the parties would select an appraiser or that—as NRC contends and JMR disputes—a single party unilaterally could designate an appraiser and impose that person's appraisal on the other party. In the absence of such an agreement, upon NRC's decision to exercise Option B, there was nothing to prevent JMR from engaging its own appraiser and presenting an opposing contended fair market value. If that happened, the agreement does not contain any mechanism for resolving any discrepancies in the fair market value opinions of different appraisers. 'With no specification in the agreement as to how to address such greatly varying estimates in the value of [JMR's] property, the price term is not, as it must be, certain and definite.' [*Connor v. Harless*, 176 N.C. App. 402, 406, 626 S.E.2d 755, 758 (2006)]."

4. Finding of fact 53. "NRC's argument is misplaced. The rent payments paid by NRC to JMR were required under the Lease agreement, not under Option A or Option B."

5. Finding of fact 55. "[*Brooks v. Hackney*, 329 N.C. 166, 404 S.E.2d 854 (1991)] and [*Pure Oil Co. of the Carolinas v. Baars*, 224 N.C. 612, 31 S.E.2d 854 (1944)] are materially distinguishable from the instant case. Unlike the agreements at issue in those cases, the Lease Agreement and Option B before the court do not constitute an integrated single contract or agreement. Option B was not executed until eight months after the parties entered in to [sic] the Lease Agreement. Further, JMR's acceptance of rent payments due under ther Lease Agreement is not inconsistent with its position that Option B is not enforceable."

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotations omitted). "If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision." *Nifong v. C.C. Mangum, Inc.*, 121 N.C. App. 767, 768, 468 S.E.2d 463, 465 (1996) (citing *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989)). "Under the general rules of contract construction, where an agreement is clear and unambiguous, no genuine issue of material fact exists and summary judgment is appropriate." *Mosely v. WAM, Inc.*, 167 N.C. App. 594, 597, 606 S.E.2d 140, 142 (2004) (citing *Corbin v. Langdon*, 23 N.C. App. 21, 27, 208 S.E.2d 251, 255 (1974)).

A.

[2] Addressing NRC's arguments in the order they are raised in NRC's brief, NRC first contends that the trial court erred in treating the Lease Agreement and the revised Option to Purchase as separate transactions. Pursuant to this argument, NRC assigns error to paragraphs 53 and 55 of the trial court's 29 December 2012 opinion and order. We agree that the revised Option to Purchase was not a separate transaction, but instead a modification of the original Option to Purchase, which was a component of the overall agreement.[6]

As a general rule of contract construction, "[a]ll contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together in determining what was undertaken." *Yates v. Brown*, 275 N.C. 634, 640, 170 S.E.2d 477, 482 (1969) (citations omitted). It is under this general rule that plaintiff claims the Lease Agreement and the revised Option to Purchase are both components of a single contract. In support of its argument, plaintiff relies on *Pure Oil Co. of the Carolinas v. Baars*, 224 N.C. 612, 31 S.E.2d 854 (1944).

The plaintiff in *Pure Oil* conveyed property to the defendants by deed, and the defendants granted the plaintiff an option to repurchase the same property. *Id.* at 613, 31 S.E.2d at 855. "Within eleven months the [defendants] fell behind in [their] open account with the plaintiff" and "the parties entered into a further agreement permitting

---

6. Whether the modification is valid and enforceable is considered later in the opinion.

NRC GOLF COURSE, LLC v. JMR GOLF, LLC

[222 N.C. App. 492 (2012)]

the plaintiff to exercise its option to purchase the property, to be avoided, however, upon payment of the open account on or before [a specified date] . . . ." *Id.* at 614, 31 S.E.2d at 855. When the open account was not paid within the specified time, the plaintiff sought to enforce the exercised option. *Id.* One defendant refused. *Id.* at 614, 31 S.E.2d at 856. Our Supreme Court held that "the option [was] an integral part of the transaction, and it would be inequitable to allow the defendants to claim the property under deed from the plaintiff and at the same time annul the essential terms of its acquisition." *Id.* at 615, 31 S.E.2d at 856. "[T]he several instruments, which were executed contemporaneously and which pertain to the same transaction, are to be considered as component parts of the understanding between the parties." *Id.* Thus, "the whole contract stands or falls together." *Id.* (citation omitted).

In the case *sub judice*, the trial court determined that *Pure Oil* was distinguishable in that "the Lease Agreement and [the revised Option to Purchase] before the court do not constitute an integrated single contract or agreement." The trial court reasoned that "[the revised Option to Purchase] was not executed until eight months after the parties entered in to the Lease Agreement." We agree with the trial court that this case is distinguishable from *Pure Oil*. Yet, if the modification is determined to be valid, the Lease Agreement and revised Option to Purchase would seem to constitute an integrated single contract or agreement because "the option [was] an integral part of the transaction."

In *Pure Oil*, the Supreme Court found that the option, as executed contemporaneously with the conveyance of property by deed, was exercised at the point in time when the parties further agreed to allow the option to be avoided if the delinquent account was paid. *Id.* Thus, the option as originally executed was exercised in *Pure Oil*. This is evident from the court's statement that "the option was exercised on January 23, 1940[,]" the date the parties came to a further agreement. *Id.* In the present case, the price term in the Option to Purchase was modified on 7 March 2007, eight months after the Lease Agreement and original Option to Purchase were executed. Thus, the revised Option to Purchase was not executed contemporaneously with the Lease Agreement. Nevertheless, the Lease Agreement and the revised Option to Purchase may constitute a single agreement where the revised Option to Purchase only modified the price term in the original Option to Purchase. *See Varnell v. Henry M. Milgrom, Inc.*, 78 N.C. App. 451, 337 S.E.2d 616 (1985).

The Lease Agreement and the original Option to Purchase were executed contemporaneously on 17 July 2006 and pertain to the sale of the golf course. Additionally, section 26 of the Lease Agreement, "Option to Purchase," provides that "[s]imultaneously with the execution of this Lease, the parties shall execute an option to purchase the Property, said Option attached hereto as Exhibit B which is incorporated and made a part of this Lease." Thus, where the Lease Agreement and the original Option to Purchase were entered into in furtherance of a common purpose and where the Lease Agreement references and incorporates the original Option to Purchase, it is clear that the original agreements are components of a single transaction.

It is well settled that "[p]arties to a contract may agree to change its terms[.]" *Southern Spindle and Flyer Co., Inc. v. Milliken & Co.*, 53 N.C. App. 785, 788, 281 S.E.2d 734, 736 (1981) (citation omitted). Here, the only change to the Option to Purchase was a modification of the price term. This change was made pursuant to advice from the accountants for Guide Group and NRC that the Option to Purchase as originally drafted was not adequate to obtain the desired tax treatment. Therefore, on 7 March 2007, eight months after the execution of the Lease Agreement, in order to achieve the purpose for which the contract was entered, the original price term of $2,500,000.00 was changed to the "fair market value at exercise date[.]" The revised Option to Purchase was agreed upon by all parties and replaced the original Option to Purchase. Additionally, although the revised Option to Purchase was executed 7 March 2007, it was dated to be effective as of 17 July 2006—the date the Lease Agreement and original Option to Purchase were executed.

Defendants argue that the trial court's conclusion that the Lease Agreement and Option to Purchase were two separate contracts is confirmed by the integration clause in the Lease Agreement. Defendants recite the following portion of the clause in their argument: "This Lease and all Exhibits and Addenda hereto contains all agreements of the parties with respect to any matter mentioned herein. No prior or contemporaneous agreement or understanding pertaining to any such matter shall be effective." Defendants conveniently omit the last sentence of the clause, which states "[t]his Lease maybe [sic] modified in writing only, signed by the parties in interest at the time of the modification." Where the Lease Agreement specifically allows for modification, the integration clause does not prevent the revised Option to Purchase from being considered a part of the original agreement between the parties.

Thus, as our Supreme Court found in *Pure Oil*, "the option [was] an integral part of the transaction, and it would be inequitable to allow the defendants to claim the property under deed from the [Guide Group] and at the same time annul the essential terms of its acquisition." *Pure Oil Co.*, 224 N.C. at 615, 31 S.E.2d at 856. Therefore, we disagree with the trial court's finding that the Lease Agreement and the Option to Purchase were separate agreements.

B.

**[3]** Although the revised Option to Purchase may be considered a component of the larger transaction, the requirements for modifying a contract must be met for the revised Option to Purchase to be valid and enforceable. NRC contends that the revised Option to Purchase was supported by consideration in the form of lease payments. Again, NRC specifically takes exception to paragraphs 53 and 55 of the trial court's 29 December 2010 opinion and order. We disagree.

"Parties to a contract may agree to change its terms; but the new agreement, to be effective, must contain the elements necessary to the formation of a contract." *Southern Spindle and Flyer Co.*, 53 N.C. App. at 788, 281 S.E.2d at 736 (citation omitted). Therefore, "a modification to a contract must be supported by consideration." *Sessler v. Marsh*, 144 N.C. App. 623, 634, 551 S.E.2d 160, 166-67 (2001) (citing *Labarre v. Duke University*, 99 N.C. App. 563, 393 S.E.2d 321 (1990)). "Consideration can be found in benefit to the promisor or detriment to the promisee." *Brenner v. Little Red School House, Ltd.*, 59 N.C. App. 68, 70, 295 S.E.2d 607, 609 (1982); *see also Sessler*, 144 N.C. App. at 634, 551 S.E.2d at 167 ("Consideration 'consists of any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.'" (quoting *Lee v. Paragon Group Contractors, Inc.*, 78 N.C. App. 334, 338, 337 S.E.2d 132, 134 (1985))).

Plaintiff contends that its payments under the Lease Agreement were sufficient consideration to support the Option to Purchase. In support of its argument, plaintiff cites *First-Citizens Bank & Trust Co. v. Frazelle*, 226 N.C. 724, 40 S.E.2d 367 (1946).

In *Frazelle*, the court addressed a situation where the defendant's decedent father leased real property to the plaintiff for a term of one year, with the plaintiff receiving a privilege to renew the lease at its expiration for additional one-year periods for nine successive years. *Id.* at 725-26, 40 S.E.2d at 369. The lease also granted the plaintiff the option to purchase the property at any time during the term of the

NRC GOLF COURSE, LLC v. JMR GOLF, LLC

[222 N.C. App. 492 (2012)]

lease, or extensions thereof. *Id.* However, when the plaintiff sought to exercise the option the defendant refused. *Id.* In coming to the conclusion that the option was enforceable, our Supreme Court stated that "[t]he continued occupancy of the premises by the plaintiff and the payment of rent in accordance with the terms of the lease, constituted renewals or extensions thereof." *Id.* at 727, 40 S.E.2d 370. Thus, where the plaintiff was still leasing the property, the Court held that "[t]he lease is a sufficient consideration to support specific performance of the option of purchase granted therein." *Id.* at 728, 40 S.E.2d 370.

The issue now before this Court is whether the lease payments are sufficient consideration to support the modification of the Option to Purchase. We think not. As a result, NRC's reliance on *Frazelle* is misplaced.

First, there are no modifications to the agreements in *Frazelle*, 226 N.C. 724, 40 S.E.2d 367. Here, we are dealing with a modification to the Option to Purchase. Second, *Frazelle* addresses whether continued occupancy and payments after the expiration of a lease are sufficient consideration for renewal of the lease. *Id.* And, in *Frazelle*, the lease was for a one-year term with an option to renew at the expiration of the lease for additional one-year terms for nine successive years. *Id.*

In the instant case, the Lease Agreement specified a five-year term, beginning on 1 August 2006 and ending 21 July 2011. The Lease Agreement in *Frazelle* included an option to renew, but renewal is not at issue before this Court. NRC sought to exercise the Option to Purchase on 28 October 2009 within the original five-year term of the agreement.

While NRC's payments under the terms of the Lease Agreement may have been sufficient consideration to support the inclusion of the original Option to Purchase, the lease payments are not sufficient consideration to support a modification to the Option to Purchase. Under the Lease Agreement, NRC was legally obligated to make monthly payments to JMR for the five-year term. Where NRC was already legally obligated to make the lease payments, the payments are not adequate consideration to support a modification to the Option to Purchase. *See Anthony Tile & Marble Co., Inc. v. H. L. Coble Const. Co.*, 16 N.C. App. 740, 744, 193 S.E.2d 338, 341 (1972) ("It is generally established that a promise to perform an act which the promisor is already bound to perform is insufficient consideration for

a promise by the adverse party." (citing *Sinclair v. Travis*, 231 N.C. 345, 57 S.E.2d 394 (1950))).

Thus, where no new consideration was provided to support the modification to the Option to Purchase, the revised Option to Purchase, as executed on 7 March 2007, is not enforceable.

C.

**[4]** NRC also argues that the trial court erred in determining that the doctrine of quasi-estoppel did not estop JMR from contesting the validity and enforceability of the revised Option to Purchase. We disagree.

"[T]he essential purpose of quasi-estoppel . . . is to prevent a party from benefitting by taking two clearly inconsistent positions." *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 88, 557 S.E.2d 176, 181 (2001). Thus, "[u]nder a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." *Whitacre Partnership v. Biosignia, Inc.*, 358 N.C. 15, 18, 591 S.E.2d 870, 881-82 (2004). In applying the doctrine, it is important to keep in mind that "quasi-estoppel is inherently flexible and cannot be reduced to any rigid formulation." *Id.* at 18, 591 S.E.2d at 882.

In this case, although we have determined that the Lease Agreement and Option to Purchase are components of a single transaction, we have also determined that the modification to the Option to Purchase is invalid and unenforceable for lack of consideration. Therefore, the revised Option to Purchase was never a part of the agreement.

"[Q]uasi-estoppel 'is directly grounded . . . upon a party's acquiescence or acceptance of payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts.' " *Id.* at 19, 591 S.E.2d at 882 (citation omitted). Here, there is no evidence that JMR accepted any benefit under the revised Option to Purchase. The only potential benefit to JMR under the revised Option to Purchase is the payment of the fair market value for the golf course at the exercise date. However, when NRC sought to exercise the revised Option to Purchase, JMR refused and never accepted any payment under the option.

The sole benefit received by JMR under the entire agreement was a monthly lease payment made by NRC under the terms of the Lease Agreement. NRC argues that JMR's acceptance of the monthly lease

payments is acceptance of the benefits of the revised Option to Purchase. We disagree because these payments were not required under the terms of the revised Option to Purchase.

### D.

**[5]** NRC's final contention in arguing the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of JMR is that the Option to Purchase was facially valid. Where the modification to the Option to Purchase is invalid and unenforceable for lack of adequate consideration, summary judgment is appropriate and we need not reach this additional argument.

### II

**[6]** NRC also contends the trial court erred in granting JMR's request for preliminary and mandatory injunctive relief. NRC specifically assigns error to the trial court's findings in paragraph 28 of its 22 July 2010 order and paragraph 9 of its 30 September 2010 order. We need not address this portion of NRC's argument because NRC has regained possession of the golf course, thus rendering the issue moot.

"[G]enerally, an 'appeal presenting a question which has become moot will be dismissed.'" *In re Hackley*, ____ N.C. App. ____, ____, 713 S.E.2d 119, 121 (2011) (quoting *Matthews v. North Carolina Dep't of Transp.*, 35 N.C. App. 768, 770, 242 S.E.2d 653, 654 (1978) (citation omitted)).

> Our Supreme Court has stated that "[a] case is considered moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Lange v. Lange*, 357 N.C. 645, 647, 588 S.E.2d 877, 879 (2003) (citation and quotation marks omitted). When the questions originally at issue in a case are no longer at issue when the case is on appeal, the appeal is moot and should be dismissed. *N.C. Press Assoc., Inc. v. Spangler*, 87 N.C.App. 169, 171, 360 S.E.2d 138, 139 (1987).

*Id.*

Here, NRC has challenged the trial court's 22 July 2010 and 30 September 2010 orders granting preliminary and mandatory injunctive relief. The 22 July 2010 order required NRC to pay JMR $99,996.00 for lease payments due to JMR between February 2010 and July 2010 or surrender possession of the golf course to JMR. The order further required NRC to make monthly lease payments of $16,666.00 to JMR until the preliminary injunction was dissolved or

NRC surrendered possession of the golf course to JMR. The 30 September 2010 order required that, upon the surrender of the golf course by NRC to JMR, NRC additionally would surrender possession of all golf course operating equipment to JMR, for use by JMR in the operation of the golf course during the pendency of the litigation.

NRC claims this preliminary and mandatory injunctive relief was granted in error. However, NRC has regained possession of the golf course since it filed its brief with this Court. As described in NRC's and the Bank's Joint Rule 37(e)(2) Motion For Partial Withdrawal of Appeal filed with this Court on 21 October 2011, the Bank foreclosed on its lien on the golf course on 18 August 2011, and JMR surrendered title to the golf course on 30 August 2011. NRC has reached a settlement with the Bank, pursuant to which NRC has regained possession of the golf course. Therefore, the question of whether the trial court erred by granting preliminary and mandatory injunctive relief dispossessing NRC of the golf course is moot.

In the Joint Rule 37(e)(2) motion, NRC "further contends that this Court [should] remand [this case] to the trial court for a determination of damages suffered by NRC as a result of the wrongful mandatory injunction dispossessing NRC of the golf course and transferring its assets to JMR." However, we need not address issues of compensation where the trial court further ordered that it:

> will hold a hearing and status conference with all parties for the purpose of considering and/or determining then-remaining issues between the parties, including but not limited to . . . present and future compensation, if any, to be paid by JMR to NRC for use of the Golf Course operating Equipment at times material to this civil action.

The trial court's entry of summary judgment in favor of defendants is affirmed. NRC's appeal of the preliminary and mandatory injunctive relief is dismissed as moot.

Affirmed in part; dismissed in part.

Judge ELMORE concurs.

Judge ERVIN concurs in part and concurs in result only in part by separate opinion.

ERVIN, Judge, concurring in part and concurring in the result in part.

Although I concur in the Court's decision to limit our consideration of Plaintiff's challenge to the trial court's order to the matters at issue between Plaintiff and Defendant JMR; the Court's decision to treat Plaintiff's interlocutory appeal as a petition for the issuance of a writ of *certiorari* and to issue the requested writ in order to reach the merits of the dispute between Plaintiff and Defendant JMR; and the Court's holdings that the trial court did not err by failing to find that Defendant JMR's challenge to the validity of the modified purchase option was barred by the doctrine of quasi-estoppel, that Plaintiff's challenge to the preliminary and mandatory injunctive relief granted in the trial court is moot given the fact that Plaintiff has regained control of the golf course, and that the issue of the amount of compensation that should be paid for the use of certain golf course property is not properly before us at this time, I am unable to agree with the Court's determination that the modified purchase option was not supported by adequate consideration. However, given that the price term contained in the modified purchase option was not sufficiently definite to create an enforceable contractual provision, I concur in the Court's ultimate decision to affirm the trial court's decision to enter summary judgment in favor of Defendant JMR. Moreover, given that a determination that the modified purchase option is invalid obviates the necessity to determine whether the modified purchase option is a separate contract or a part of the original contract, I do not believe that we should reach that issue. As a result, I concur in the Court's decision in part and concur in the result reached by the Court in part.

## Consideration

According to basic principles of contract law:

> An enforceable contract is one supported by consideration. Moreover, where a contract has been partially performed, as is the case here, a modification of its terms is treated as any other contract and must also be supported by consideration. It is well established that consideration sufficient to support a contract or a modification of its terms consists of "any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee."

*Lee v. Paragon Group Contractors*, 78 N.C. App. 334, 337-38, 337 S.E.2d 132, 134 (1985) (citing *Investment Properties v. Norburn*, 281 N.C. 191, 196, 188 S.E. 2d 342, 345 (1972) and quoting *Brenner v. School House, Ltd.*, 302 N.C. 207, 215, 274 S.E. 2d 206, 212 (1981)

(other citation omitted)), *disc. review denied,* 316 N.C. 195, 345 S.E.2d 383 (1986). Mutual promises exchanged between contracting parties constitute sufficient consideration to support an enforceable agreement. *See, e.g., Howe v. O'Mally,* 5 N.C. (1 Mur.) 287, 289 (1809):

> A conveyed to B a tract of land, containing 221 acres, more or less. Some years afterwards it was mutually agreed to have the land surveyed, and if it were found to contain more than 221 acres, the defendant should pay the Plaintiff ten dollars per acre for the excess: if it fell short, Plaintiff to refund to Defendant at the same rate. Here are mutual promises, and one is a good consideration, to support the other.

*See also, e.g., Penley v. Penley,* 314 N.C. 1, 16, 332 S.E.2d 51, 60 (1985) (stating that the parties' "mutual promises to accept the division of shares and to continue to operate the business as before, followed by the transfer of jointly owned property," constituted sufficient "consideration to support the promise, on the part of each of the parties, to split the shares in the incorporated business equally"); *Brenner,* 302 N.C. at 215, 274 S.E.2d at 212 (stating that a modification to a contract between a school and a parent was supported by adequate consideration when, "[i]n return for defendant's promise to refund the tuition paid, plaintiff would relinquish his right to have his child educated in defendant school"); *IWTMM, Inc. v. Forest Hills Rest Home,* 156 N.C. App. 556, 562, 577 S.E.2d 175, 179 (2003) (stating that "consideration need not consist of a promise to pay money for goods or services" and that consideration can, "[i]nstead, . . . take the shape of mutual promises to perform some act or to forbear from taking some action."); *Brumley v. Mallard, L.L.C.,* 154 N.C. App. 563, 568, 575 S.E.2d 35, 38 (2002) (finding "ample consideration to support the modification of the contract at the property closing" in a situation in which the plaintiff "accepted a different buyer" and the defendant "agreed to guarantee the transactions"), *aff'd,* 357 N.C. 247, 580 S.E.2d 691 (2003); *Martin v. Vance,* 133 N.C. App. 116, 122, 514 S.E.2d 306, 310 (1999) (stating that "[m]utual binding promises provide adequate consideration to support a contract.") (citations omitted). As long as both parties promise to give up an otherwise existing right at the time that they entered into a contract modification, that modification is supported by sufficient consideration.

According to the record, the original purchase option provided that Plaintiff would be entitled to purchase the golf course for $2,500,000.00 at any time before the expiration of the Lease Agreement. The modified purchase option, on the other hand, pro-

vided that Plaintiff could purchase the golf course for its fair market value as of the exercise date. As a result, at the time that it entered into the modified purchase option, Defendant JMR relinquished the right to sell the golf course for $2,500,000.00 and agreed to sell the golf course for its fair market value at the time the modified purchase option was exercised. Plaintiff, on the other hand, relinquished the right to buy the golf course for $2,500,000.00 and promised to pay a purchase price based on fair market value. Thus, the record clearly establishes that both parties agreed to relinquish the right to sell or to purchase the golf course for $2,500,000.00 and to accept or pay fair market value in lieu thereof. Thus, both parties made mutual promises, relinquished existing rights, and obtained new rights at the time that they entered into the modified purchase option, demonstrating, contrary to the result reached by my colleagues, that the modified purchase option was supported by adequate consideration.[1]

### Enforceability of the Modified Purchase Option Price Term

"One of the essential elements of every contract is mutual[ity] of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, there is no agreement. . . . A contract, and by implication[,] a provision, leaving material portions open for future agreement is nugatory and void for indefiniteness. . . . Consequently, any contract provision . . . failing to specify either directly or by implication a material term is invalid as a matter of law."

*Rosen v. Rosen*, 105 N.C. App. 326, 328, 413 S.E.2d 6, 7 (1992) (quoting *MCB Ltd. v. McGowan*, 86 N.C. App. 607, 608-09, 359 S.E.2d 50, 51 (1987)). The price term set out in the modified purchase option provided that Plaintiff would be entitled to repurchase the golf course at a purchase price "based on fair market value at exercise date validated by an independent third party appraisal." As stated by the trial court in Finding of Fact No. 48[2]:

---

1. In its brief, Plaintiff argues that the modified purchase option was supported by its periodic lease payments required under the terms of the original lease. I agree with the Court's determination that the periodic rent payments required under the original lease agreement do not adequately support the modified purchase option.

2. As should be obvious, Finding of Fact No. 48 is a conclusion of law rather than a finding of fact.

Here, Option B does not set forth an objective process or mechanism for determining a purchase price for the Golf Course. It simply provides that the purchase price for the Golf Course "shall be based on fair market value at exercise date *validated* by an independent third party appraisal." (emphasis added) While there is a bare bones agreement as to use of a third party appraisal, there is no agreement as to what fair market value the appraisal is to "validate." Among other things, there is no agreement as to how or [when] an initial determination of fair market value is to be made, how the parties would select an appraiser or that—as NRC contends and JMR disputes—a single party unilaterally could designate an appraiser and impose that person's appraisal on the other party. In the absence of such an agreement, upon NRC's decision to exercise Option B, there was nothing to prevent JMR from engaging its own appraiser and presenting an opposing contended fair market value. If that happened, the agreement does not contain any mechanism for resolving any discrepancies in the fair market value opinions of different appraisers. "With no specification in the agreement as to how to address such greatly varying estimates in the value of [JMR's] property, the price term is not, as it must be, certain and definite." *Connor* [*v. Harless,*] 176 N.C. App. [402,] 406, 626 S.E.2d [755,] 758 [(2006), *disc. review denied,* 361 N.C. 219, 642 S.E.2d 247 (2007).]

I agree with the trial court's conclusion that, because the modified purchase option fails to specify the manner in which an appraiser would be selected or how the fair market value of the golf course would be determined, it is invalid and unenforceable. The fact that the parties might, in the abstract, be able to obtain a determination of the property's fair market value through litigation does not, at least to my way of thinking, necessitate the adoption of a different result given that there is little or no difference in principle between that result and an unenforceable agreement to agree. As a result, I agree with the Court, albeit for a different reason, that the modified purchase option was unenforceable and that the trial court properly granted summary judgment in favor of Defendant JMR. Having made this determination, I see no need to address the issue of whether the documents executed by the parties constitute a single contract or multiple contracts, since Defendant would be entitled to prevail regardless of the manner in which that issue was resolved.

PHILIPS v. PITT CNTY. MEM'L HOSP., INC.

[222 N.C. App. 511 (2012)]

<u>Conclusion</u>

Thus, I concur with the Court's preliminary rulings concerning the scope of the issues that are properly before us in this case and the extent to which we should address the enforceability of the modified purchase option on the merits. In addition, I concur with the Court's ultimate decision that the trial court's order should be affirmed given that the price term set out in the modified purchase option is too indefinite to be enforceable. However, I do not agree that the Court needs to address the issue of whether the modified purchase option constitutes a separate contract or part of the original lease, or with the Court's holding that the modified purchase option is not supported by adequate consideration. As a result, I respectfully concur in the Court's opinion in part and concur in the result reached by the Court in part.