McGuire v. LORD Corp., 2020 NCBC 11.

STATE OF NORTH CAROLINA

WAKE COUNTY

ROBERT MCGUIRE,

          Plaintiff,

v.

LORD CORPORATION,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 11634

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

1. This action arises from Plaintiff Robert McGuire's ("McGuire") contention that Defendant LORD Corporation ("LORD" or the "Company") breached its representative's promise that he would have an opportunity to repurchase certain shares from LORD if he first elected to sell those shares to LORD under existing agreements between LORD and McGuire. McGuire alleges that he relied upon LORD's promise in selling his shares but was not permitted to repurchase his shares thereafter. McGuire alleges various claims based on these alleged facts, and LORD now moves to dismiss each of these claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") (the "Motion"). (Def.'s Mot. Dismiss, ECF No. 9.)

2. After considering the Motion, the related briefs, the Complaint, the documents identified and relied upon in the Complaint and submitted by LORD in support of the Motion, and the arguments of counsel at the hearing on the Motion on January 16, 2020 (the "Hearing"), the Court hereby **GRANTS** the Motion and dismisses McGuire's Complaint with prejudice.

*Vennum PLLC, by Elizabeth Vennum and Jordan Burke, for Plaintiff Robert McGuire.*

*Parker, Poe, Adams & Bernstein LLP, by Scott E. Bayzle and Charles E. Raynal, IV, for Defendant LORD Corporation.*

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6). Rather, the Court recites only those facts alleged in the Complaint that are relevant to the Court's determination of the Motion. The Court may consider documents to which the Complaint specifically refers, even when such documents are submitted by the defendant.[1] *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Additionally, the Court may "reject allegations [in the complaint] that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

4. McGuire served as LORD's Regional Director in Japan from 2013 to 2018. (Compl. ¶ 7, ECF No. 3.) In that role, LORD offered McGuire the opportunity to purchase from LORD shares of LORD's Class B Common Stock (the "Class B Shares" or "Shares") under LORD's Management Incentive Plan's Restricted Stock Program (the "Plan"). (Compl. ¶ 8.) Under the Plan, participants, including McGuire, had the opportunity to purchase Shares during a period established by LORD each year, typically in the Spring (the "Annual Purchase Period"). (*See* Def.'s Mem. Law Supp.

---

[1] The parties agree that the exhibits attached to LORD's Motion, (ECF Nos. 10.2–10.6), are relied upon and referenced in the Complaint, and McGuire has withdrawn any objection to the Court's consideration of those documents on this Motion.

Def.'s Mot. Dismiss Ex. A, at ¶ 4 [hereinafter the "Plan"], ECF No. 10.2.) To effect the purchase of Shares under the Plan, a participant was first required to sign a stock purchase agreement with the Company. (Plan ¶ 4.) McGuire signed his stock purchase agreement, specifically titled "Third Restated Stock Purchase Agreement" (the "Stock Purchase Agreement" or the "Agreement"), on May 20, 2014.[2] (Def.'s Mem. Law Supp. Def.'s Mot. Dismiss Ex. B [hereinafter the "Stock Purchase Agreement"], ECF No. 10.3.) Consistent with the Plan and the Agreement, McGuire thereafter purchased 675 Class B Shares from LORD. (Compl. ¶ 11.)

5. The Plan and the Agreement governed McGuire's rights with respect to these Shares. Under the Agreement, McGuire was permitted to redeem Shares during a specially identified period each year (the "Annual Redemption Period"), (Stock Purchase Agreement ¶ 2(c)), and the Plan and the Agreement governed McGuire's right to repurchase any Shares after redemption, (Plan ¶ 10). LORD's Stock Redemption Policy, which is part of the Plan, (Compl. ¶ 8), specified the "procedures to be applied by [LORD] in determining the manner in which redemption requests will be received and administered in the event shareholders request redemption of shares in excess of resources made available by [LORD]." (Def.'s Mem. Law Supp. Def.'s Mot. Dismiss Ex. D, at 1 [hereinafter the "Stock Redemption Policy"], ECF No. 10.5.)

---

[2] The Stock Purchase Agreement specifically provided that it "set[ ] forth agreements and understandings between [McGuire] and Lord with respect to any" Class B Shares that "may be purchased by [McGuire] subject to [the] Agreement[.]" (Stock Purchase Agreement 1; *see also* Compl. ¶ 9.)

6.     The Plan made clear that at all times the Compensation Committee of LORD's Board of Directors had the right, "in its sole discretion," to amend, modify, suspend, or terminate the Plan and the Stock Purchase Agreement (together, the "Program"). (*See* Plan ¶ 2 ("The Committee shall have the full and complete discretionary authority to . . . change the terms of the Program, including but not limited to terminating the Program."); Plan ¶ 16 ("The Committee shall have the right in its sole discretion to amend or modify the Program in any manner at any time, including the right in its sole discretion to suspend or terminate the Program in whole or in part.").) Similarly, the Stock Redemption Policy provided that it could be "modified or terminated at anytime by the Board." (Stock Redemption Policy 1.)

7.     In 2017, McGuire decided to explore the potential sale of some of his Class B Shares. He e-mailed LORD's Shareholder Relations Specialist, Denise Austin ("Austin"), on March 2, 2017, stating that he understood he could sell stock once a year and was "contemplating selling some stock in March or April to cover some expenses." (Def.'s Mem. Law Supp. Def.'s Mot. Dismiss Ex. C [hereinafter the "E-mail Exchange"], ECF No. 10.4.) He asked Austin, "Is this possible?" and, "Can I then turnaround and buy back again in June?" (E-mail Exchange 1.) Austin responded the same day, "yes, you can sell up to 100K net proceeds once per year. [A]nd you can turn around and purchase in June." (E-mail Exchange 1.) McGuire then asked, "What if I want to sell more?" (E-mail Exchange 1.) Austin replied, "you can request to redeem additional shares and then the request has to be approved. I am not in the

office this week and have limited access to my files. I can send you all of the request docs on Monday." (E-mail Exchange 1.)

8.    According to McGuire, he relied on Austin's representation—which McGuire characterizes as a "guarantee"—concerning his right to repurchase sold Shares in June 2017 in selling 329 of his Shares for net proceeds of $449,398.41 on April 18, 2017. (Compl. ¶ 24.) Ten days later, on April 28, 2017, LORD suspended the Plan, which prevented McGuire from repurchasing his sold Shares. LORD subsequently terminated the Plan in December 2017. (Compl. ¶¶ 26–27.) McGuire alleges that the value of each sold Share he was denied the right to repurchase has increased from $3,230 in 2017 to $11,000 as of the filing of the Complaint. (Compl. ¶ 35.)

9.    McGuire filed this action on August 23, 2019, alleging claims against LORD for: (i) breach of contract, (ii) negligence, (iii) negligent misrepresentation, (iv) breach of implied duty of good faith and fair dealing, and (v) violation of sections 78A-8(2) and 78A-56(b)(2)[3] of the North Carolina Securities Act ("NCSA"), N.C.G.S. § 78A-1 et seq., for which he seeks monetary relief. (Compl. 7–12.)

10.    LORD filed the current Motion in lieu of an answer on November 5, 2019. The Motion has been fully briefed, and all parties were represented by counsel at the Hearing. The Motion is now ripe for resolution.

---

[3] For purposes of this Motion, the Court assumes McGuire's reference to section 78A-56(b)(2), a subsection that does not exist, reflects a typographical error and that his claim is brought instead under N.C.G.S. § 78A-56(b).

## II.

## LEGAL STANDARD

11. When considering a motion to dismiss under Rule 12(b)(6), the Court determines "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736 (2018) (citation omitted).

12. The Court views the allegations in the complaint "in the light most favorable to the non-moving party[,]" *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017) (citation omitted), and will not dismiss the complaint "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim[,]" *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted). However, the Court is "not required . . . to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (internal quotation marks and citation omitted). Under Rule 12(b)(6), dismissal of a complaint is proper: "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

III.

ANALYSIS

A.    Breach of Contract

13.    McGuire does not allege that LORD has breached the Agreement or the Plan.  Rather, McGuire's breach of contract claim is based on his allegation that he entered into a new contract with LORD based on his e-mail exchange with Austin "together with the Stock Purchase Agreement and the Plan" (the "New Contract"). (Compl. ¶ 38.)   McGuire contends that under the New Contract, he would be permitted to repurchase during the Annual Purchase Period any Class B Shares he elected to sell during the Annual Redemption Period.  (Compl. ¶ 39.)  McGuire asserts that LORD breached the New Contract by preventing McGuire from repurchasing in June 2017 the Class B Shares he sold in April 2017.[4]  (Compl. ¶ 40.)

14.    To maintain a claim for breach of contract, a plaintiff must plead "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  For a valid contract to exist, there must be "mutual assent of both parties to the terms of the agreement so as to

_____

[4] Although McGuire makes the argument in his opposition brief that he alleges breach based on the "old" contract created by the Plan and Stock Purchase Agreement, (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss 13 [hereinafter "Opp'n Br."], ECF No. 15), the Court only looks to the allegations of the Complaint, and McGuire has not made a claim based on the "old" contract in his Complaint. *See, e.g.*, *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) ("A Rule 12(b)(6) motion tests the legal sufficiency of the pleading." (citation omitted)); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017) ("When considering a Rule 12(b)(6) motion to dismiss, 'a court properly may consider only evidence contained in or asserted in the pleadings.' " (citation omitted)); *see also Brown v. Secor*, 2017 NCBC LEXIS 65, *19 (N.C. Super. Ct. July 28, 2017) ("The requirement to liberally construe the complaint is not an invitation to rewrite it.").

establish a meeting of the minds." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980). "The well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Se. Caissons, LLC v. Choate Constr. Co.*, 247 N.C. App. 104, 110, 784 S.E.2d 650, 654 (2016) (citation omitted). Mutual assent is determined by "the parties' words and acts from the perspective of a reasonable person." *Baker v. Bowden*, 2017 NCBC LEXIS 31, at *9 (N.C. Super. Ct. Apr. 3, 2017) (citing *Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962)).

15. Where parties agree to modify a contract, the modification, as a new agreement, must meet all requisite elements of a contract and must be supported by additional consideration. *See NRC Golf Course, LLC v. JMR Golf, LLC*, 222 N.C. App. 492, 502, 731 S.E.2d 474, 480 (2012) ("Parties to a contract may agree to change its terms; but the new agreement, to be effective, must contain the elements necessary to the formation of a contract." (quoting *Southern Spindle & Flyer Co., Inc. v. Milliken & Co.*, 53 N.C. App. 785, 788, 281 S.E.2d 734, 736 (1981)); *LaBarre v. Duke Univ.*, 99 N.C. App. 563, 565, 393 S.E.2d 321, 323 (1990) (holding that modifying an existing contract requires "additional consideration"); *see also Geiger v. Cent. Carolina Surgical Eye Assocs., P.A.*, No. COA14-169, 2014 N.C. App. LEXIS 1051, at *17 (N.C. Ct. App. Oct. 7, 2014) ("[A] modification must reflect an agreement between the parties that the terms of the contract should be altered." (internal quotation marks and citation omitted)). Consideration sufficient to support a contract or contract modification has been defined as "any benefit, right, or interest

bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." *Lee v. Paragon Grp. Contractors, Inc.*, 78 N.C. App. 334, 337–38, 337 S.E.2d 132, 134 (1985) (citation omitted).

16.    LORD contends that the alleged New Contract is invalid, requiring dismissal of McGuire's claim for breach.  Specifically, LORD argues that there was never an offer, acceptance, or consideration to support the New Contract, and further, that instead of guaranteeing a right to repurchase as McGuire contends, Austin's e mails "merely summariz[ed] certain procedures for redemption and purchase of shares under [the Plan and Stock Purchase Agreement] as they existed at the time."[5] (Def.'s Mem. Law Supp. Def.'s Mot. Dismiss 11.)  The Court agrees.

17.    McGuire's opening e-mail to Austin on March 2, 2017 was a straightforward request for information concerning the then-current Plan:

> Denise
>
> I understand I can sell stock one time per year.  I am contemplating selling some stock in March or April to cover some expenses.  Is this possible?  What is the amount of time required?
>
> Can I turn around and buy back again in June?
>
> Bob

---

[5] LORD also grounds its argument for dismissal of the contract claim on the Plan's provisions permitting the Compensation Committee of LORD's Board of Directors to amend, modify, suspend, or terminate the Plan at any time in its sole discretion, which it elected to lawfully do here, and on its contention that, in any event, Austin lacked authority to bind LORD to amend or modify the Plan or Agreement through the New Contract. (Mem. Law Supp. Def.'s Mot. Dismiss 10–12, ECF No. 10.)  The Court finds it unnecessary to discuss either in connection with this claim.

(E-mail Exchange 1.)  McGuire did not make an offer to contract through his e-mail, nor did he suggest to Austin that he was seeking her assent to an agreement or inviting her to negotiate.  Viewed in the light most favorable to McGuire, he simply sought information from the appropriate LORD representative concerning the terms of the current Plan.

18.    Austin's response later that day provided the information McGuire requested: "yes, you can sell up to 100K net proceeds once per year and you can turn around and purchase in June."    (E-mail Exchange 1.)    Austin was plainly communicating information about the Plan's terms and not making an offer on behalf of LORD to allow McGuire to repurchase his Shares in June should he elect to sell them in April.  Austin did not suggest that LORD would repurchase McGuire's Shares in June, regardless of whether the Plan permitted such a purchase or not, and McGuire did not ask her to guarantee that he would have the right to repurchase any sold Shares in June 2017 separate and apart from his rights under the Plan and the Agreement.  In short, McGuire seeks to convert an e-mail exchange requesting and conveying information about the Plan's terms into a new contract that contravenes the express terms of the Plan and the Agreement.  And even if the e-mail exchange could be read as creating the alleged New Contract, McGuire has not pleaded any facts showing that Lord received any benefit, right, or interest for its alleged promise or any forbearance, detriment, or loss undertaken by McGuire.  Thus, even reading the e-mail exchange in the light most favorable to McGuire, the Court concludes that

McGuire's alleged New Contract was never formed as a matter of law and thus that his breach of contract claim must be dismissed.

B.     Breach of Implied Duty of Good Faith and Fair Dealing

19.     McGuire alleges that LORD had an implied duty of good faith and fair dealing in performing and enforcing the New Contract.  (Compl. ¶ 57.)  Because the Court has concluded that the New Contract was not formed as a matter of law, McGuire's claim for breach of an implied duty under that contract necessarily fails.[6] *See Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at \*23 (N.C. Super Ct. Aug. 20, 2019) ("North Carolina state court decisions considering good faith and fair dealing claims that are 'part and parcel' of breach of contract claims . . . have concluded that the two claims merely stand or fall together.").

C.     Tort and Statutory Claims

20.     McGuire also asserts claims for negligent misrepresentation, negligence, and violation of the NCSA.  Each claim is premised on two theories of recovery, one based on omission, and the other on misrepresentation.

21.     McGuire's omission-based claims rest on his contention that Austin, as LORD's Shareholder Relations Specialist with regular contact with LORD's Board, knew or should have known that LORD retained the ability to modify or terminate

---

[6] McGuire contends in conclusory fashion in his opposition brief that LORD breached the implied duty of good faith and fair dealing in connection with the "old" contract under the Plan and Stock Purchase Agreement.  (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss 13.) McGuire does not plead such a claim in his Complaint, however, and, in any event, fails to identify in the Complaint or his brief what implied term McGuire allegedly violated and how. As such, any purported claim for breach of an implied duty of good faith and fair dealing based on the "old" contract necessarily fails and must be dismissed.

the Plan—and thus that McGuire's ability to repurchase any sold Shares was not guaranteed—yet failed to so inform McGuire. (Compl. ¶ 30; *see also* Compl. ¶¶ 32–33 (alleging that Austin provided misleading information when she omitted the "material fact" that McGuire's repurchase of shares was "conditional and not absolute").)

22. McGuire's misrepresentation-based claims are based on his allegation, made "on information and belief," that LORD decided to suspend and/or terminate the Plan prior to McGuire's March 2, 2017 e-mail inquiry and thus that Austin knew or should have known at the time of her e-mail communications with McGuire that "she could not truthfully guarantee [McGuire's] ability to repurchase shares," yet did so anyway. (Compl. ¶ 31; *see also* Compl. ¶ 51 (alleging that Austin had "actual knowledge about potential changes to the Plan").)

23. The Court now turns to McGuire's specific tort-based claims.

1. Negligent Misrepresentation and Negligence[7]

24. McGuire first asserts negligent misrepresentation and negligence claims based on Austin's alleged failure to inform McGuire that the Plan allowed LORD to modify or terminate the Plan at any time. (Compl. ¶¶ 47–48, 50–51.) As LORD points out, however, under North Carolina law, a negligent misrepresentation claim cannot be based on an omission. *See Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at *112–13 (N.C. Super. Ct. Dec. 31, 2019) ("[A] claim for negligent misrepresentation can only be based on affirmative misrepresentations, not on omissions." (citing

---

[7] McGuire's negligence claim is based entirely on the same allegations that support his negligent misrepresentation claim; thus, the Court treats them together.

*Harrold v. Dowd*, 149 N.C. App. 777, 783, 561 S.E.2d 914, 919 (2002))). As a result, McGuire's negligent misrepresentation claim, and his negligence claim based on omission, must be dismissed to the extent they are based on Austin's alleged failure to provide McGuire information about the Plan.

25. McGuire's negligent misrepresentation and negligence claims based on Austin's affirmative misrepresentations fare no better. First, as explained in dismissing McGuire's breach of contract claim above, Austin's e-mail statements to McGuire did not guarantee, promise, or otherwise commit LORD to repurchase McGuire's Shares in the event he sold them. The context of the exchange makes plain that McGuire was seeking information about the Plan as it then existed, and Austin was providing Plan information in response to that inquiry. As such, to the extent McGuire's negligent misrepresentation and negligence claims depend on Austin's statements constituting a "guarantee" of a right to repurchase his Shares, his claims necessarily fail.

26. More broadly, McGuire's claims for negligent misrepresentation and negligence likewise fail because, based on the facts alleged, McGuire's purported reliance on Austin's statements was unjustified as a matter of law. "Justifiable reliance is an essential element of . . . negligent misrepresentation." *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 277, 715 S.E.2d 541, 549–50 (2011) (quoting *Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996)). "Reliance is not justifiable for purposes of negligent misrepresentation if a plaintiff failed to make reasonable inquiry, had the opportunity to investigate, and could 'have learned the

true facts through reasonable diligence[.]' " *BDM Invs. v. Lenhil, Inc.*, 826 S.E.2d 746, 761 (N.C. Ct. App. 2019) (quoting *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 796 S.E.2d 827, 832 (2017)).

27.   Here, even if Austin's statements could be read as a promise or guarantee, McGuire had access to the Plan documents, (Compl. ¶ 48), and those documents revealed that the Plan could be amended or terminated at any time; thus, any LORD promise to permit repurchase of Shares was not guaranteed.  Even though "the question of justifiable reliance is generally a factual issue for the jury," *Ness v. Jones*, 89 N.C. App. 504, 506, 366 S.E.2d 570, 571 (1988), North Carolina law makes plain that McGuire's purported reliance on Austin's statements as a guarantee of repurchase as alleged here is unjustified as a matter of law*, see, e.g.*, *Boone Ford, Inc. v. IME Scheduler, Inc.*, 822 S.E.2d 95, 100 (N.C. Ct. App. 2018) (holding reliance unjustified as a matter of law where alleged misrepresentation contradicted express contract term); *Cobb*, 215 N.C. App. at 277, 715 S.E.2d at 549–50 (holding plaintiff's failure to read insurance policy that contradicted defendant's representation "resulted in unjustifiable reliance" as a matter of law because plaintiff "could have discovered [the policy's] true meaning with minimal investigation").

28.   For each of these reasons, therefore, the Court concludes that McGuire's negligent misrepresentation and negligence claims must be dismissed under Rule 12(b)(6).

## 2. NCSA claims

29. McGuire asserts two NCSA claims, one under section 78A-56(b) and the other under section 78A-8(2). N.C.G.S. § 78A-56(b) provides that a person who purchases a security "by means of any untrue statement of a material fact or any omission [of] a material fact" and "who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission" may seek recovery from the seller. N.C.G.S. § 78A-8(2) makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]" As a general matter, "the NCSA does not impose a duty to disclose," *Aldridge*, 2019 NCBC LEXIS 116, at \*119 (citation omitted); rather, "[l]iability must be tied to a statement which was untrue or which was made misleading by omissions[,]" *NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC LEXIS 11, at \*36–37 (N.C. Super. Ct. Feb. 19, 2013).

30. McGuire's claims under sections 78A-56(b) and 78A-8(2) are based on both omission and misrepresentation. Central to the former is McGuire's allegation that Austin had a duty to advise McGuire that the Plan permitted its modification or termination at any time but failed to do so. But McGuire's pleading acknowledges that the Plan documents (i.e., the Plan, Agreement, and Stock Redemption Policy) were available for his inspection and review, (Compl. ¶ 48), and he nowhere alleges that LORD prevented his review of those documents or otherwise impeded his ability

to ascertain their terms. It is undisputed that had McGuire consulted the Plan documents, he would have readily seen that the Plan and the Stock Redemption Policy could be terminated at any time in LORD's sole discretion. (*See* Plan ¶ 2 (permitting LORD "full and complete discretionary authority to . . . change the terms of the Program, including but not limited to terminating the Program"); Plan ¶ 16 (permitting LORD "the right in its sole discretion to suspend or terminate the Program in whole or in part"); Stock Redemption Policy 1 (permitting LORD to "modif[y] or terminate [the Policy] at anytime").)

31.     Because LORD provided McGuire the Plan documents and those documents made plain that LORD could modify or terminate the Plan at any time in its sole discretion, McGuire cannot show that LORD failed to provide information of which McGuire was unaware as required under section 78A-56(b) or made a statement that was "misleading" under section 78A-8(2). *See, e.g., Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 34–35, 581 S.E.2d 452, 463 (2003) (finding no actionable omission under section 78A-56(b) where defendant provided document to plaintiff summarizing plaintiff's material rights and disputed transaction's material terms). Accordingly, the Court concludes that McGuire's omission-based claims under sections 78A-56(b) and 78A-8(2) must therefore be dismissed.

32.     McGuire's misrepresentation-based claims under sections 78A-56(b) and 78A-8(2) are similarly deficient. First, the same allegations which preclude justifiable reliance on McGuire's negligent misrepresentation claim preclude a factfinder from concluding that McGuire, "in the exercise of reasonable care," "could

not have known . . . of the untruth" of Austin's statements under section 78A-56(b) because the Plan documents clearly provide that LORD could terminate the Plan at any time for any reason.

33. Moreover, McGuire's misrepresentation claims under both section 78A-56(b) and section 78A-8(2) necessarily fail because McGuire has not alleged facts showing that Austin made an "untrue statement of a material fact" as required under both sections. *See Worley v. Moore*, 2018 NCBC LEXIS 114, at \*19–20 (N.C. Super. Ct. Nov. 2, 2018) (finding no liability under sections 78A-56(b) and 78A-8(2) where plaintiffs failed to sufficiently allege that statements constituting misrepresentations or misleading omissions had been made). Taking McGuire's allegations as true, Austin accurately related to McGuire on March 2, 2017 that under the then-current Plan, McGuire would have had a right to repurchase his sold Shares in June 2017.

34. In opposition, McGuire relies on his conclusory allegation that, "on information and belief," Austin knew when she e-mailed McGuire that LORD had decided to suspend and terminate the Plan, (Compl. ¶ 31), to assert that Austin's statement concerning repurchase in June 2017 was false. This allegation does not salvage McGuire's claim. Although McGuire alleges that a decision to suspend and terminate the Plan had been made, McGuire does not allege that LORD had decided at the time of Austin's March 2, 2017 statements to McGuire that any planned suspension and termination would occur prior to June 2017—the timing necessary to make Austin's March 2, 2017 statement to McGuire inaccurate. McGuire's allegation that the Plan was suspended in late April 2017, on which McGuire also relies, does

not bear on whether the decision to suspend prior to June 2017 was made prior to Austin's e-mail on March 2, 2017. As a result, based on the pleaded allegations, the Court concludes that a factfinder could not reasonably find that Austin's March 2, 2017 e-mail statements were false when made.

35. It also bears mentioning that the only allegation McGuire makes concerning Board decision-making that is not "on information and belief" is his assertion that as of the date of Austin's e-mails in early March, "the Board was exploring alternatives to the Plan[.]" (Compl. ¶ 51(b).) To allege that the Board was "exploring alternatives to the Plan," however, is not to allege that a decision to suspend and terminate the Plan had been made, providing further support for the Court's conclusion that McGuire has failed to allege facts showing that Austin's statements were false when made.

36. For each of these reasons, therefore, the Court concludes that McGuire's claims under sections 78A-56(b) and 78A-8(2) are fatally deficient and should be dismissed as a matter of law.

IV.

CONCLUSION

37. **WHEREFORE**, based on the foregoing, the Court hereby **GRANTS** the Motion and **DISMISSES** McGuire's Complaint, and all the claims alleged therein, with prejudice.

**SO ORDERED**, this the 11th day of February, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge